An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1139

Filed: 5 May 2015

Disciplinary Hearing Commission, No. 03 DHC 16

THE NORTH CAROLINA STATE BAR, Plaintiff,

v.

WILLIE D. GILBERT, II, Attorney, Defendant.

Appeal by defendant from order entered 7 March 2014 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 17 March 2015.

> *The North Carolina State Bar, by Deputy Counsel David R. Johnson and Maria J. Brown and Counsel Katherine Jean, for plaintiff-appellee.*
>
> *Willie D. Gilbert, II, pro se, for defendant-appellant.*

DIETZ, Judge.

In April 2010, the Disciplinary Hearing Commission of the North Carolina State Bar (DHC) entered an order suspending the law license of Defendant Willie D. Gilbert, II, for a period of five years but staying that suspension provided that Gilbert comply with certain conditions. The order provided that DHC could activate the suspension of Gilbert's license for a violation of any one of the conditions in the order.

The State Bar sought activation of the suspension of Gilbert's license in October 2013 on the grounds that Gilbert failed to comply with a number of the conditions of the stay. After a hearing on 13 January 2014, DHC concluded that Gilbert had substantially violated three conditions of the stay and ordered activation of the suspension for a period of three years.

On appeal, Gilbert suggests that the State Bar unfairly targeted him and pursued activation of his suspension for vindictive reasons. Upon review of the whole record, we hold that DHC was within its discretion to refuse to consider a response brief containing new arguments that Gilbert served on the State Bar during the hearing, after the State Bar presented its evidence. We also hold that there was substantial evidence supporting DHC's findings that Gilbert violated the Rules of Professional Conduct, failed to timely pay his State Bar dues, and failed to timely file required accounting reports of his client trust account. These findings support DHC's determination that Gilbert's license suspension should be activated. Accordingly, we affirm.

**Facts and Procedural History**

On 7 April 2010, the Disciplinary Hearing Commission (DHC) entered an Order of Discipline concluding that Defendant Willie D. Gilbert, II, misappropriated for his own use funds belonging to three clients and failed to use entrusted funds to

pay a client's obligation to a third party. DHC suspended Gilbert's license to practice law for a period of five years but stayed the suspension on condition that Gilbert comply with certain requirements, including: (1) that he not violate any Rules of Professional Conduct; (2) that he fulfill all requirements for membership in the North Carolina State Bar, including payment of fees and costs by the applicable deadlines; and (3) that he timely deliver to the Office of Counsel semi-annual written reports by a certified public accountant verifying Gilbert's compliance with all rules regarding trust accounts. Gilbert did not appeal this order.

On 3 October 2013, the North Carolina State Bar moved for DHC to issue an order directing Gilbert to show cause why his suspension should not be activated. The State Bar contended that Gilbert had violated all three of the above-referenced conditions of the stay order. Six days later, on 9 October 2013, DHC entered an order requiring Gilbert to appear and show cause why the Commission should not activate the suspension of his law license, setting a hearing date for 13 December 2013.

Gilbert, appearing *pro se*, moved to continue the show cause hearing to a date after 5 January 2014 (other than a Thursday or Friday) because of ongoing family medical issues. DHC denied this motion on the ground that Gilbert "ha[d] not demonstrated good cause to continue the hearing currently scheduled for December 13, 2013." Gilbert then obtained counsel and, on 4 December 2013, renewed his

motion to continue the show cause hearing. During an unrecorded telephone conference regarding this motion, defense counsel provided additional details about Gilbert's personal conflict and informed the hearing panel of other scheduling conflicts in the month of December. Counsel also explained that Gilbert was scheduled to participate in a jury trial in early January and that he might need to request an additional continuance on short notice. The Chair of the panel assigned to hear Gilbert's case indicated that if such additional motion were filed, DHC would consider it immediately. Gilbert claims that the Chair then stated she was hesitant to continue the case for a lengthy period of time because "she had a duty to get lawyers who pose a threat to the public off the streets." Nevertheless, DHC granted Gilbert's renewed motion, continuing the proceedings until 13 January 2014. Gilbert did not file any further motions to continue.

The day of the hearing, before the commencement of the proceedings, Gilbert filed a written response to the State Bar's charges, raising various legal defenses for the first time. As the hearing began, Gilbert, through counsel, orally moved to continue, arguing that he had inadequate time to prepare and suggesting that the panel was biased against him. The Chair denied this motion, announcing DHC's findings of fact and conclusions of law at the hearing. DHC later filed a written order memorializing those findings and conclusions on 26 March 2014.

DHC commenced the show cause proceeding and Gilbert declined to put on evidence before hearing from the State Bar. After the State Bar rested its case, Gilbert served his written response—which he had filed earlier that morning—on the State Bar counsel for the first time. The State Bar objected to Gilbert's attempt to introduce this document into evidence, indicating that the Bar had not anticipated certain legal arguments raised in the document and thus the State Bar had no time to prepare a response. DHC agreed that Gilbert's response was untimely and refused to consider the document as evidence or a substitute for Gilbert's testimony. Nevertheless, DHC allowed Gilbert to use the document to refresh his recollection as he testified before the panel.

At the conclusion of the hearing, DHC determined that Gilbert substantially failed to comply with the conditions of the stay and activated the suspension of his law license for a period of three years. Gilbert timely appealed.

**Analysis**

**I.     Denial of Motion to Continue**

Gilbert first argues that DHC erred by denying his oral motion to continue the show cause hearing. He contends that DHC abused its discretion in denying his motion because the order "had only been pending for a short period of time," he "had only recently hired defense counsel," and he had insufficient time to prepare due to

an ongoing family medical issue, the recent holidays, and the fact that he had just completed a jury trial. At the time he moved for the continuance, Gilbert also suggested that the Chair of the panel was biased against him because of her reluctance, during an earlier telephone conference with Gilbert's counsel, to continue the proceedings until March 2014. We disagree.

This Court may reverse DHC's denial of a motion to continue only for manifest abuse of discretion. *N.C. State Bar v. McLaurin*, 169 N.C. App. 144, 148, 609 S.E.2d 491, 494 (2005). A tribunal abuses its discretion where its ruling "could not have been the result of a reasoned decision." *Id*. "Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice." *In re D.Q.W.*, 167 N.C. App. 38, 40, 604 S.E.2d 675, 676-77 (2004) (internal quotation marks omitted). In general, a tribunal should not grant a continuance "unless the reasons therefor are fully established. Hence, a motion for continuance should be supported by an affidavit showing sufficient grounds." *State v. Stepney*, 280 N.C. 306, 312, 185 S.E.2d 844, 848 (1972).

In this case, DHC already had continued the hearing from December until January based on Gilbert's personal conflicts as well as the scheduling conflict of Gilbert's counsel. In his oral motion to continue the proceedings on the day of the

hearing, Gilbert did not cite any new information, but suggested that the panel was biased against him for initially declining to continue the hearing until March. DHC denied Gilbert's motion and, in light of his accusations against the panel, rendered findings of fact and conclusions of law from the bench.

DHC found that during a telephone conference regarding Gilbert's renewed motion to continue, Gilbert informed the panel of a possible scheduling conflict due to his participation in a jury trial in early January. The panel indicated that, should Gilbert request a continuance on short notice on this ground, DHC promptly would consider his motion. But Gilbert did not file a second motion to continue, and his jury trial concluded before the start of his DHC hearing. In light of the whole record, we thus hold that DHC did not abuse its discretion in concluding that Gilbert "failed to show good cause for a continuance." *See McLaurin*, 169 N.C. App. at 147-48, 609 S.E.2d at 494.

## II. Gilbert's Legal Defenses

Gilbert next argues that DHC erred in "refus[ing] to consider any of the reasons or legal defenses proffered by the appellant for not lifting the stay of his suspension." Specifically, Gilbert argues that because the rules governing hearings before the Disciplinary Hearing Commission do not provide a timeframe within which a defendant must submit arguments in response to the State Bar's Motion for Order

to Show Cause, *see* 27 N.C.A.C. 1B § .0114(w)(3)(X) (2013), DHC erred in determining that his written response was untimely. We disagree.

In the absence of a specific rule to the contrary, DHC hearings are governed by the North Carolina Rules of Civil Procedure for nonjury trials and its corresponding common law rules. *See* 27 N.C.A.C. 1B § .0114(n); *N.C. State Bar v. Barrett*, 219 N.C. App. 481, 486, 724 S.E.2d 126, 130 (2012). Under long-standing North Carolina trial doctrine, "[t]he conduct of a trial" is "the exclusive province of the trial court." *State v. Aytche*, 98 N.C. App. 358, 363, 391 S.E.2d 43, 46 (1990). Thus, "[u]nless there is a controlling statutory provision or an established rule which governs the situation, all matters relating to the orderly conduct of the trial, or which involve the proper administration of justice in the court, are within the trial court's discretion." *Id.*; *see also Shute v. Fisher*, 270 N.C. 247, 253, 154 S.E.2d 75, 79 (1967) ("It is impractical and would be almost impossible to have legislation or rules governing all questions that may arise on the trial of a case. Unexpected developments, especially in the field of procedure, frequently occur. When there is no statutory provision or well recognized rule applicable, the presiding judge is empowered to exercise his discretion in the interest of efficiency, practicality and justice."). Under this settled precedent, decisions concerning the orderly conduct of a DHC hearing reside in the sound discretion of DHC.

In this case, Gilbert filed his written response to the State Bar's allegations on the morning of the hearing, arguing for the first time that the doctrine of laches and the requirements of due process barred the action against him. He then sought to introduce this document into evidence and to address the arguments raised therein with no notice to the State Bar, and only after the State Bar had rested its case. DHC ultimately concluded that the late introduction of this document would prejudice the State Bar and, in its discretion, declined to accept the untimely filing.

We hold that the decision not to permit Gilbert to submit a written response raising new arguments on the day of the hearing, after the State Bar already had presented its case, was well within DHC's discretion to manage the orderly conduct of the proceeding. Contrary to Gilbert's assertions, DHC did not deny him the opportunity to respond to the State Bar's allegations at the show cause proceeding. Gilbert took the stand and provided extensive testimony at the hearing. And, although DHC refused to allow Gilbert to enter his written response into evidence or to use it as a substitute for his own testimony, DHC permitted him to refer to the document as he testified. Accordingly, we hold that DHC did not abuse its discretion when it refused to consider Gilbert's untimely written response.

Gilbert also asks this Court to consider, for the first time, the legal arguments that he attempted to raise in that untimely written response. We decline to do so. It

is well-settled that this Court will not consider for the first time on appeal an issue not properly preserved below. *See* N.C. R. App. P. 10(a)(1); *State v. Mills*, 205 N.C. App. 577, 583-84, 696 S.E.2d 742, 746-47 (2010). Thus, because Gilbert failed to timely raise these issues below, we will not consider them on appeal.

### III. Suspension of Gilbert's Law License

Finally, Gilbert argues that DHC erred in concluding that he violated the conditions of the stay and in activating the suspension of his law license for a period of three years. Pursuant to 27 N.C.A.C. 1B § .0114(w)(3)(X), DHC may "enter an order lifting the stay and activating the suspension, or any portion thereof, . . . if it finds that the North Carolina State Bar has proven, by the greater weight of the evidence, that the defendant has violated a condition." The standard of review on appeal from an administrative agency's final decision is the whole-record test. *N.C. State Bar v. Talford*, 356 N.C. 626, 632, 576 S.E.2d 305, 309 (2003). Under the whole-record test, this Court must determine whether DHC's findings of fact are supported by substantial evidence when viewed in light of the whole record, and whether those findings support DHC's conclusions of law. *Id.* Evidence is substantial if a reasonable mind might accept it as adequate to support a conclusion. *Id.* at 632, 576 S.E.2d at 309-10. "The whole-record test also mandates that the reviewing court must take into account any contradictory evidence or evidence from which conflicting inferences

may be drawn." *Id.* at 632, 576 S.E.2d at 310. Our task is, ultimately, to determine whether DHC's decision "has a rational basis in the evidence." *Id.* (internal quotation marks omitted).

### a. Compliance with the Rules of Professional Conduct

DHC admitted into evidence a certified copy of a 16 September 2010 order by Johnston County Superior Court Judge Thomas H. Lock censuring Gilbert for violating the Rules of Professional Conduct. In its order lifting the stay of Gilbert's suspension, DHC made findings of fact based upon Judge Lock's order and concluded that parts of the censure related to misrepresentations Gilbert made to the court during the period of his stayed suspension.

On appeal, Gilbert argues that DHC should not have admitted Judge Lock's order into evidence because "material aspects of [it] lacked trustworthiness," and therefore DHC's findings of fact predicated on this order lacked "a rational basis in the evidence." Gilbert also challenges DHC's conclusion of law that the doctrine of collateral estoppel barred Gilbert from challenging Judge Lock's findings of fact at the DHC hearing.

There is no basis in the record to conclude that Judge Lock's order "lacked trustworthiness" and we reject that argument. We likewise reject Gilbert's argument concerning the application of collateral estoppel. Under the doctrine of collateral

estoppel, "the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). North Carolina law does not require mutuality of parties for invocation of collateral estoppel, whether offensive or defensive, and a plaintiff asserting collateral estoppel thus need not be in privity with the plaintiff in the prior action. *Rymer v. Estate of Sorrells*, 127 N.C. App. 266, 269, 488 S.E.2d 838, 840 (1997). Rather, where a prior judgment was rendered against the defendant, a plaintiff's assertion of offensive collateral estoppel is equitable where: (1) the defendant had adequate incentive to defend vigorously and could foresee future suits, (2) the judgment forming the basis for the estoppel is not inconsistent with any previous judgments in favor of the defendant, (3) the second action provides no additional procedural opportunities "that could readily cause a different result," and (4) the plaintiff could not easily have joined the earlier action. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *Rymer*, 127 N.C. App. at 270, 488 S.E.2d at 841.

Gilbert focuses on the fourth factor of this test, contending that the State Bar "could have, but did not, intervene" in the Johnston County civil action in which the trial court disciplined him. But beyond these mere assertions, Gilbert provides no

argument for why the State Bar "easily" could have intervened in that civil case, and there is none.

Gilbert also argues that the State Bar's delay in seeking activation of his suspension caused him to pursue less vigorously his appeal of Judge Lock's order. But what matters is that Gilbert had an opportunity to appeal, and he did, in fact, appeal.[1]  Thus, this arguments is meritless.

Finally, Gilbert argues that the differences between the standards of review applicable to Judge Lock's order and an order of DHC render application of collateral estoppel inequitable.  We disagree.  Judge Lock made his findings of fact regarding Gilbert's misconduct under a clear, cogent, and convincing evidentiary standard, a stricter burden of proof than the greater weight of the evidence standard applicable in the proceeding below.  *See* 27 N.C.A.C. 1B § .0114(w)(3)(X).  Because the burden of proof in Gilbert's State Bar disciplinary hearing was less exacting than the standard applied by Judge Lock, we reject Gilbert's argument.

In sum, upon review of the whole record, there is substantial evidence supporting DHC's finding that Gilbert violated the Rules of Professional Conduct. Accordingly, DHC did not err in concluding that Gilbert violated the conditions of his stay or in activating the suspension of his law license on this ground.

---

[1] This Court dismissed Gilbert's appeal without reaching the merits.

**b. Timely Compliance with Terms of Bar Membership**

Gilbert next challenges DHC's finding that he failed to pay his State Bar dues. Gilbert concedes that he missed the 30 June 2013 deadline to pay and that the State Bar was forced to send him a notice to show cause concerning his outstanding dues. But Gilbert contends that DHC erred in concluding that he "failed to comply timely with all membership requirements of the North Carolina State Bar," because, although he did not pay his dues by the due date, "like hundreds of other lawyers in the State of North Carolina," he "timely paid his 2013 membership fees within 30 days of having been served with the notice to show cause." We reject this argument.

By statute, every active member of the North Carolina State Bar must remit payment of an annual membership fee prior to the first day of July of each year. N.C. Gen. Stat. § 84-34 (2013). The fact that Gilbert made payment by October and did not have to report before the State Bar to face discipline for his tardiness does not mean his payment was timely. And, unlike "hundreds of other lawyers in the State of North Carolina," Gilbert was under a particular obligation—at the risk of activation of the suspension of his law license—to remit timely payments as the result of previous State Bar disciplinary action. Importantly, Gilbert admits that he failed to pay his dues by the applicable statutory deadline of 30 June 2013. Accordingly,

DHC did not err in concluding that Gilbert failed to comply with this condition of the stay, or in activating the suspension of his law license on this ground.

### c. Timely Filing of Trust Account Reports

Gilbert next challenges DHC's finding that Gilbert did not submit the required reports by a certified public accountant concerning his client trust account. Gilbert concedes that his earlier disciplinary order required him to retain a certified public accountant to provide semi-annual written reports confirming his compliance with all rules regarding trust accounts. He also does not dispute that these reports were due by 10 January and 10 July of each year. But Gilbert argues that DHC erred in finding that he failed to submit the required reports from 2011 through 2013. He contends that, because he did not have a client trust account throughout the entire period of his stayed suspension, he was under no obligation to submit any reports. Gilbert also raises the issues of his financial hardship and instability as reasons for his failure to timely comply with the requirements of the order. We reject these arguments.

Gilbert is correct that the 2010 order did not contain a provision stating what reporting was required if he did not have a client trust account. However, Gilbert also admits that he made no effort to contact the State Bar regarding his financial difficulties, to apply for a modification of the 2010 order, or to explain to the State

Bar the he did not maintain a client trust account and to clarify whether he was required to comply with this condition if he did not maintain a trust account. Instead, Gilbert filed affidavits attesting to his proper management of entrusted funds, without filing the required accountant reports. This is sufficient evidence to support DHC's finding that Gilbert failed to comply with this condition of the order.

DHC also found that Gilbert was "less than forthcoming" in his testimony because, although he stated that he did not understand when the accounting reports were due, the record includes a letter from Gilbert to an accountant accurately stating the applicable deadline. Accordingly, there is substantial evidence in the record supporting DHC's finding that Gilbert failed to timely comply with this condition of the stay.

## Conclusion

The Disciplinary Hearing Commission's 2010 Order of Discipline permitted activation of Gilbert's suspension upon his violation of any one of the conditions of the stay imposed in that order. Upon review of the whole record, we hold that DHC's findings are supported by substantial evidence and those findings support DHC's conclusion that Gilbert's suspension should be activated for a three-year period. Accordingly, we affirm.

AFFIRMED.

Judges CALABRIA and McCULLOUGH concur.

Report per Rule 30(e).